UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**CHAUNCY BELL,**

Plaintiff,

v.                                                            **No. 4:25-cv-00285-P**

**LHOIST NORTH AMERICA
OF TEXAS, LLC,**

Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 47. Having considered the briefings and evidence of record, the Court concludes the Motion should be and hereby is **GRANTED**.

## BACKGROUND

Defendant Lhoist North America of Texas, LLC, ("Lhoist") produces various lime products and uses truck drivers to ship its products to Texas customers. ECF No. 53 at 1–2. Plaintiff Chauncy Bell was a truck driver assigned to Lhoist's McKinney, Texas, terminal. ECF No. 48 at 1. Bell, who is Black, alleges that Lhoist discriminated against him based on his race and retaliated against him for alleged protected activity. ECF No. 53 at 7.

Bell started working at Lhoist in August 2020. ECF No. 48 at 1. He reported to fleet supervisor Jesse Ruiz but only saw Ruiz several times while employed by Lhoist and rarely interacted with him personally . ECF No. 48 at 3–4. More often, Bell interacted with dispatcher Warren Jones and terminal supervisor Jesse Morris. ECF No. 48 at 3–4. The only allegedly discriminatory comments that Bell identifies came from Jones, who called Lhoist employees "you guys" and joked about

employees being "pack mules" in general group settings. ECF No. 48 at 5. Otherwise, Bell does not allege that any employee of Lhoist made a rude, offensive, or derogatory comment to Bell in a one-on-one setting. ECF No. 48 at 15.

When Bell inquired about applying for other Lhoist positions or promotions, Lhoist informed him that he needed to be at Lhoist for a year before moving to other positions, was told that the positions were not open, or that Lhoist was "holding off" on hiring for them. ECF No. 48 at 5–6; ECF No. 53 at 4. But Bell claims that Lhoist promoted several White colleagues to some of the positions he allegedly sought, though he does not provide the qualifications for those positions or whether he or those who were promoted met those qualifications. ECF No. 53 at 4

Bell's other discrimination concerns primarily arose at the beginning and end of his workdays. Lhoist drivers began their day by conducting mandatory pre-trip inspections. ECF No. 53 at 3. Lhoist enforced these checks by placing red pre-trip inspection tags on drivers' vehicles. ECF No. 53 at 3. Bell always found the inspection tags, so he was never disciplined because of them. ECF No. 53 at 3.

At the end of the day, the first Lhoist driver to come back to the terminal received the "last load," which was inconvenient because it often resulted in the driver running late to the terminal that night. ECF No. 53 at 5–6. Sometimes, this meant that the driver would have to wash their truck in the dark or come back earlier than normal the next morning to wash their truck before deliveries began. ECF No. 53 at 5–6. Bell delivered the last load of the day fourteen times during his time at Lhoist. ECF No. 55 at 7. Bell listed several non-Black drivers he believed regularly avoided taking last loads. ECF No. 53 at 5. Neither party suggests that drivers, whether White or Black, were disciplined for avoiding the last load or had to deliver the last load without pay. ECF No. 53 at 5. Sometimes, Black or White drivers were also assigned weekend loads. ECF No. 48 at 13.

In a December 2020 conversation with Jones, Bell asked if he was assigned a load because he was Black. ECF No. 53 at 6. Jones denied this. ECF No. 48 at 7. Bell claims he continued to complain about

discrimination and texted Jones about the inspection tags (though the record lacks any further detail on the nature of these complaints or the contents of the text). ECF No. 53 at 6. Otherwise, Bell never complained to anyone in management or Human Resources about race discrimination. ECF No. 53 at 6.

After his conversation with Jones, Bell thought that the inspection tags became more frequent. ECF No. 53 at 7. Bell's diligent checks for the tags also lead to his discovering various problems with his truck, such as broken lights, loose lug nuts, disconnected wires, and a hole in his fuel tank; he claims these were the result of tampering and suggests that Lhoist was responsible. ECF No. 53 at 6. He claims that Black drivers had to clean up more spills than White drivers. ECF No. 48 at 7. Bell also observed that only White drivers received new trucks, though he did not provide details about the other drivers' qualifications or other reasons why they might have received the equipment. ECF No. 48 at 4–5. And about a month after his conversation with Jones, Bell received his first and only disciplinary reprimand for not wearing his seatbelt and using a mobile device while operating his Lhoist vehicle. ECF No. 53 at 6–7. Bell admits that he had regularly engaged in these behaviors throughout his employment. ECF No. 53 at 6.

Bell voluntarily resigned from Lhoist on May 7, 2021, telling a healthcare provider that he had left employment because of family difficulties. ECF No. 48 at 18–19. Bell filed this suit asserting claims for unlawful discrimination and retaliation under 42 U.S.C. § 1981, initiating this action on August 7, 2024. ECF No. 1. Bell filed his First Amended Complaint on March 21, 2025, which is the live complaint in this case. ECF No. 27. Lhoist moved for summary judgment on both claims on December 12, 2025. ECF No. 47. It is ripe for review.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43

3

(1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023).

The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

Defendant seeks summary judgment on each of the claims levied by Mr. Bell. The Court will address each in turn.

**A. Mr. Bell fails to state a prima facie case of race discrimination because he lacks material evidence that he qualified for promotions or that other drivers were valid comparators.**

Section 1981 prohibits race discrimination in the "making, performance, modification, and termination of contracts." 42 U.S.C. § 1981(b). Bell's Section 1981 claims are evaluated under the *McDonnell Douglas* burden-shifting framework when, as here, the plaintiff relies on circumstantial evidence. *Wesley v. Gen. Drivers, Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 213 (5th Cir. 2011). The analysis for *McDonnell Douglas* requires a three-step burden-shifting framework for evaluating discrimination claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden initially lies with the plaintiff to establish a prima facie case. *Id.* It then shifts to the defendant to

"articulate some legitimate, nondiscriminatory reason for the [employment action]." *Id.* Finally, a plaintiff is afforded an opportunity to show through adequate evidence that the defendant's stated reasons were a mere pretext for discrimination. *Id.* at 804. The legal framework governing Title VII and Section 1981 claims is the same. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

To establish a prima facie case of discrimination, an employee must demonstrate that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Id.* at 319–20.

Here, a reasonable jury could not find that Bell established a prima facie discrimination case because Bell did not provide evidence that he was qualified for the promotions he allegedly sought, and he does not provide evidence that other Lhoist employees were similarly situated.

As to the first element, Lhoist does not dispute that Bell, being Black, is a member of a protected group. ECF No. 48 at 3.

As to the second element, Lhoist does not dispute that Bell was qualified as a truck driver, ECF No. 53 at 12; *see also* ECF No. 48 at 9–10; ECF No. 55, but Bell fails to provide any evidence from which a reasonable jury could find that he was qualified for the promotions he claims he was denied. *See* ECF No. 53 at 12. Thus, Bell's promotion theory fails at the second element, but his other theories proceed to the third and fourth elements.

Even assuming, without deciding, that Bell's other discrimination theories are actionable adverse actions under the third element, he fails to provide evidence that the employees he claims Lhoist treated favorably were similarly situated under the fourth element.

An employee is "similarly situated" if they are in "nearly identical" circumstances to the plaintiff, meaning that they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable

violation histories." *Harville v. City of Houston*, 945 F.3d 870, 875 (5th Cir. 2019) (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)). A conclusory explanation of why an employee is similarly situated is insufficient; a plaintiff must identify specific overlapping job duties, responsibilities, past performance, or other specific attributes that render the employee "nearly identical." *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 652 (5th Cir. 2025).

Here, Bell fails to provide evidence that the employees he alleges Lhoist treated favorably were similarly situated. Bell lists the names of several White drivers who are outside his protected class and alleges that they did not have to engage in certain tasks like he did or that they received favorable treatment in various ways. ECF No. 53 at 5. Even if Lhoist treated these drivers favorably like Bell argues, Bell fails to identify sufficient evidence in the record that shows that these drivers are similarly situated—he does not provide these drivers' scope of responsibilities, past performance, or any other specific characteristics that would render them "nearly identical." *See* ECF No. 53 at 5. Thus, Bell's allegations that these individuals are comparators are conclusory and do not provide a basis for a reasonable jury to find in his favor on this element.

Therefore, Bell fails to make a prima facie case of discrimination because he did not raise any genuine dispute of material fact as to his qualifications for promotions or any specific characteristics of White drivers that would make them similarly situated.

### B. Bell fails to state a prima facie case of retaliation; he lacks evidence that he engaged in protected activity or that he suffered an actionable adverse action.

Bell also asserts that Lhoist retaliated against him for various alleged protected actions. A retaliation claim is similarly analyzed under *McDonnell Douglas*. *Johnson v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024). First, to establish a prima facie case of retaliation, Bell must show that "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected

activity and the adverse employment action." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

First, Bell fails to provide material evidence that he engaged in protected activity. An individual engages in a protected activity if they (1) oppose race discrimination that they reasonably believed to be unlawful or (2) participate in a qualifying investigation, proceeding, or hearing. *Yarbrough v. SlashSupport, Inc.*, 152 F.4th 658, 667 (5th Cir. 2025), *cert. denied*, 25-857, 2026 WL 795104 (Mem) (U.S. Mar. 23, 2026).

To support his assertion that he engaged in protected activity, Bell provides a singular incident where he asked Jones, who was not a manager, if he was giving Bell a load because Bell was Black (to which Jones responded that he was not). ECF No. 53 at 6. But this incident provides no evidence that Bell reasonably believed his being assigned the load was unlawful, nor does it suggest that he was opposing the practice. Further, Bell admits that he did not submit a formal complaint to Human Resources or management. ECF No. 53 at 6. No reasonable jury could find that Bell was opposing discrimination that he reasonably believed to be unlawful based on this evidence.

Beyond this incident, Bell claims that he "continued to complain to Mr. Jones that he and other Black drivers were being targeted with tags and weekend assignments," and that he "texted Mr. Morris about the tags." ECF No. 53 at 6. But Bell fails to point to evidence in the record regarding the nature of these continued complaints—such conclusory statements do not suffice to establish protected activity. *See* ECF No. 53 at 6. A jury would have no reasonable basis to find that Bell was opposing activity he reasonably believed unlawful. Thus, there is no genuine dispute of material fact as to whether Bell engaged in protected activity, so his prima facie retaliation claim fails.

But even if Bell can show that he engaged in protected activity, his alleged adverse actions are not actionable under § 1981. To be adverse, an employment action must cause some harm affecting an identifiable term or condition of employment. *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024). In other words, the challenged action must meaningfully alter the terms of employment and injure the employee.

7

*Fleming v. Methodist Healthcare Sys. Of San Antonio, Ltd. L.L.P.*, No. SA-21-CV01234-XR, 2024 WL 1055120, at \*12 (W.D. Tex. Mar. 11, 2021). De minimis workplace trifles are not actionable under § 1981. *See Hamilton v. Dall. Cnty.*, 79 F.4th 494, 505 (5th Cir. 2023) (explaining that Title VII does not permit liability for de minimis workplace trifles); *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 665 (N.D. Tex. 2023) (requiring more than de minimis harm).

Bell alleges three adverse actions for his retaliation claim: (1) discipline for cell phone use and a seatbelt violation; (2) increasing the number of pre-trip inspections tags on his truck; and (3) tampering with his equipment.[1] The first of these two did not alter the terms or conditions of his employment, and the third lacks evidence in the record to hold Lhoist responsible.

The discipline and the pre-trip inspection tags are nothing more than de minimis harms. Bell fails to establish that he suffered any harm from the write up (this was his first and only disciplinary incident) or the tags. ECF No. 53 at 6–7. As for the tags, they did not alter Bell's terms of employment or injure him: Bell admits that Lhoist never disciplined him for failing to find them, and Lhoist had a history of placing the tags on its vehicles before Bell complained to Jones. ECF No. 53 at 17. There is no evidence that these are anything more than de minimis workplace trifles.

As for the tampering with his equipment, Bell states that his truck began to suffer from broken lights, loose lug nuts, and disconnected wires—no doubt, potentially serious issues—but Bell claims Lhoist was responsible without providing any evidence beyond his conclusory assertion. ECF No. 48 at 13; ECF No. 53 at 7. Without evidence that Lhoist was responsible for these problems, a reasonable jury could not find the tampering to be an adverse employment action.

---

[1] Bell also advances a theory of constructive discharge, but Bell did not raise this argument until his Response to Lhoist's Motion for Summary Judgment, so the Court does not address this argument for that reason.

Therefore, Bell's prima facie case of retaliation fails because a reasonable jury could not find from Bell's evidence that he engaged in a protected activity or that he suffered an adverse employment action.

## CONCLUSION

Therefore, because Bell fails to demonstrate a genuine dispute of material fact as to a prima facie case of discrimination or retaliation, the Court concludes that Summary Judgment should be and hereby is **GRANTED**. Accordingly, Plaintiff's claims are **DISMISSED** with prejudice.

**SO ORDERED** on this **22nd day of May 2026**.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE